UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DARREN WHITE,

                        Plaintiff,

        -against-                       **MEMORANDUM & ORDER**
                                              15-CV-3321(PKC)(RER)

THE CITY OF NEW YORK, DETECTIVE
WILLIAM J. SCHIERLE (SHIELD NO. 1491),
and DETECTIVE SHELDON FRANKLYN
(TAX REGISTRATION NO. 933786),

                        Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Darren White filed this action, pursuant to 42 U.S.C. § 1983 ("Section 1983") and

New York common law, seeking damages based on his arrests on April 18 and 20, 2013, and

subsequent detention and prosecution. (Dkt. 1.) Before the Court is Defendants' motion for

summary judgment. (Dkt. 32.) For the reasons set forth herein, the Court grants Defendants'

motion in its entirety.

## BACKGROUND

### I.    Relevant Facts[1]

On April 17, 2013, Plaintiff's half-brother, Dorel Lias, was arrested for possession of a

stolen phone. (Defs.' 56.1, Dkt. 33, ¶ 1.) Lias was taken to the New York City Police Department

("NYPD") Brooklyn Robbery Squad office, where he was questioned by Defendant Detective

William Schierle ("Det. Schierle"). (*Id.* at ¶ 2.) Early the following morning, Lias provided Det.

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

Schierle with a written statement (Declaration of Jeff Henle ("Henle Decl."), Dkt. 37, ¶ 4) stating, *inter alia*, that on February 13, 2013, Plaintiff gave Lias the phone for which Lias was arrested. Lias told the officers that Plaintiff had gotten the phone from a robbery of a Radio Shack in which Plaintiff had participated earlier that day.[2]  (Defs.' 56.1 ¶ 4; Dkt. 34-9, at ECF[3] 2.)  Lias also identified Plaintiff in a wanted poster that had been created from surveillance video of a robbery of a Radio Shack in Queens on November 13, 2012.  (Deposition of William Schierle ("Schierle Dep."), Dkt. 34-2, at 15:02-08[4]; Dkt. 34-10.)  Lias signed an ATF consent form authorizing the officers to search Plaintiff's apartment at 360 Dumont Avenue in Brooklyn.  (Defs.' 56.1 ¶ 6; Dkt. 34-11.)[5]

The same day, April 18, 2013, Det. Schierle and several non-party officers went to Plaintiff's apartment.  While the officers did not have a search or arrest warrant, Schierle knew that there was an outstanding warrant for Plaintiff's arrest in connection with a series of robberies.  (Schierle Dep., 16:7-17:6; 17:13-19; 37:8-15.)  According to Schierle, Plaintiff's sister let them into the apartment (*id.* at 28:9-29:2), and Plaintiff signed a consent form authorizing the officers to search the apartment for contraband (Dkt. 34-12).  Plaintiff, however, claims that when the officers arrived at his apartment, they "started kicking" Plaintiff's door in and "there was a gun

---

[2] Lias also said that Plaintiff had asked Lias to participate in the February 13, 2013 Radio Shack robbery hours before it occurred, but that Lias had declined.  According to Lias, immediately after the robbery, Plaintiff returned to Plaintiff's apartment at 360 Dumont Avenue in Brooklyn, where Lias was, with a sack of stolen phones, and gave one to Lias.  (Dkt. 34-9, at ECF 2.)

[3] "ECF" refers to the pagination generated by the CM/ECF system, and not the document's internal pagination.

[4] All citations to deposition transcripts refer to the internal pagination and line numbers.

[5] Although Defendants state that Lias told the officers that he (Lias) lived with Plaintiff at the Dumont Avenue apartment (Defs.' Br., at ECF 12), nothing in the record supports that statement.

placed into [his] face" (Deposition of Darren White ("White Dep."), Dkt. 37-1, at 63:6-16), and that he signed the consent form—which he claims he did not read—because he was "afraid" (White Dep., Dkt. 34-4, 68:14-25).

During the search of Plaintiff's apartment, Plaintiff told Det. Schierle that he had an air rifle that was stored in a shoebox in the living room, and "gave it" to the officers. (*Id.* at 74:23-75:9.) Because Plaintiff did not have a license for the air rifle, the officers took him into custody and brought him to the NYPD Robbery Squad office in Brooklyn. (*Id.* at 75:10-13; 81:21-82:23.) After arriving there, Plaintiff was advised of his *Miranda* rights, which he waived by signing a rights waiver form. (Defs.' 56.1 ¶ 12; Henle Decl. ¶¶ 11-12.) However, Plaintiff asserts that he did not knowingly or voluntarily sign the waiver, but did so under duress. (Henle Decl. ¶¶ 11-12.)[6]

On April 19, 2013, Defendant Detective Sheldon Franklyn ("Det. Franklyn") learned that Plaintiff was in custody, and went to the Brooklyn Robbery Squad office to question Plaintiff about a pattern of burglaries Det. Franklyn had been investigating. (Defs.' 56.1 ¶ 13.) During the interview, Plaintiff signed a confession admitting his involvement in the November 13, 2012 Radio Shack robbery in Queens. (Dkt. 34-7, at ECF 2-3; Defs.' 56.1 ¶¶ 14-15.) According to Defendants, Plaintiff also identified himself in, and then signed, a photograph that appears to be from surveillance footage of the November 2012 robbery. (Defs.' 56.1 ¶¶ 16-17; Henle Decl. ¶ 15; *compare* Dkt. 34-10 (Wanted Poster) *with* Dkt. 34-14 (photograph signed by Plaintiff).) Plaintiff does not dispute that he signed the photograph, but asserts that he "would have signed anything, including a photograph, so that his interrogation would be concluded." (Pl.'s 56.1, Dkt.

---

[6] Plaintiff raises this claim for the first time in his Rule 56.1 Statement.

3

25, at ¶ 16.)[7]

Plaintiff was then taken to Brooklyn Central Booking, and arraigned in Kings Criminal Court the following day, April 20, 2013, on a single misdemeanor charge for possession of an illegal air rifle in violation of New York City Administrative Code § 10-131(b). (Dkts. 34-15, 34-16.) At arraignment, Plaintiff was released on his own recognizance. However, because there was an outstanding investigation card indicating that Plaintiff was wanted by the Queens Robbery Squad in connection with the November 2012 Queens Radio Shack robbery, Det. Franklyn arrested Plaintiff. (Deposition of Sheldon Franklyn ("Franklyn Dep."), Dkt. 34-3, 14:6-15:7.)[8]

On April 21, 2013, Plaintiff was interviewed by members of the Queens County District Attorney's Office ("QCDA"), where he made additional inculpatory statements regarding the November 2012 robbery. (Defs.' Br. at 25; QCDA April 21, 2013 Video, Dkt. 34-8.) Following the interview, Det. Franklyn signed a felony complaint charging Plaintiff with Robbery in the First and Second Degree. (Dkt. 34-17.)

The air rifle charge was eventually dismissed on July 8, 2014 on speedy trial grounds, pursuant to § 30.30 of the New York Criminal Procedure Law. (*See* Dkt. 34-18, at ECF 2.) A few weeks later, the Queens robbery charges were also dismissed, although the specific basis for dismissal is not evident from the record. (Dkt. 34-19, at ECF 2-3.)

On September 10, 2014, Plaintiff was indicted in this Court in connection with *Hobbs* Act robbery charges. (Defs.' 56.1 ¶ 30.) On April 3, 2015, Plaintiff pled guilty to *Hobbs* Act robbery

---

[7] Plaintiff also raises this claim for the first time in his Rule 56.1 Statement.

[8] Det. Franklyn activated the investigation card on April 19, 2013 after "Plaintiff made statements that he was involved in the [November 2012] robbery[.]" (Franklyn Dep., 13:17-14:3.) However, Det. Franklyn had to wait until the following day to arrest Plaintiff because Plaintiff was already being processed in Brooklyn on the air rifle charge. (*Id.* at 14:15-24.)

conspiracy.  (*See id.*; Dkt. 34-20, at ¶ 1.)

## II.       Relevant Procedural History

Plaintiff commenced this action on June 8, 2015.  (Dkt. 1.)  On December 6, 2015,

Plaintiff withdrew his claims for malicious abuse of process, unreasonable detention, abuse of

authority, harassment, *Monell*, conspiracy, and intentional infliction of emotional distress, leaving

only his federal claims under Section 1983.  (Dkt. 27.)  The only claims remaining in this action

as to the Individual Defendants are: (1) false arrest; (2) malicious prosecution; and (3) violation

of due process under the Fifth and Sixth Amendments, for each of the two arrests.[9]  Plaintiff also

alleges violations of New York state law as to the City on a theory of *respondeat superior*.  (Dkt.

1 at ¶¶ 40-41.)  On June 23, 2017, Defendants moved for summary judgment on all of Plaintiff's

remaining claims.  (Dkt. 32.)

## LEGAL STANDARD

Summary judgment may be granted only where there is no genuine issue as to any material

fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all

factual inferences in favor of the nonmoving party.  *McClellan v. Smith*, 439 F.3d 137, 144 (2d

Cir. 2006).  "To grant the motion, the court must determine that there is no genuine issue of

material fact to be tried."  *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).  A

genuine factual issue exists where the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The initial burden of "establishing the absence of any genuine issue of material fact" rests

---

[9]  In the Complaint, Plaintiff also alleged violations of the First Amendment.  (Dkt. 1, at ¶ 1.)  However, since Plaintiff does not address this claim in his brief, the Court also considers it withdrawn.

with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp.*, 477 U.S. at 322-23. A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alterations in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. "[What] is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir. 1997).

## DISCUSSION

### I.      Section 1983

To state a claim under § 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they

did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001)

(quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Here, Plaintiff alleges,

with respect to both arrests: (1) false arrest, in violation of the Fourth and Fourteenth Amendments;

(2) malicious prosecution, in violation of the Fifth and Fourteenth Amendments; and (3) a violation

of the Due Process Clause of the Fifth and Sixth Amendments.[10]

### A.    False Arrest and Unlawful Imprisonment

Plaintiff alleges false arrest as to both the April 18 and 20, 2013 arrests. (Dkt. 1, at ¶¶ 12-

22.) "A § 1983 claim for false arrest [or false imprisonment][11], resting on the Fourth Amendment

right of an individual to be free from unreasonable seizures, including arrest without probable

cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*,

101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *see also Jenkins v. City of N.Y.*, 478

F.3d 76, 84 (2d Cir. 2007) (citing *Weyant*, 101 F.3d at 852). To prevail on a claim of false arrest

or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the

plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of N.Y.*, 331

F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "'[T]he existence of

probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*,

843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)); *see*

*also John v. Lewis*, No. 15-CV-5346 (PKC), 2017 WL 1208428, at *6 (E.D.N.Y. Mar. 31, 2017)

---

[10] The Court notes that Plaintiff did not assert a claim for unlawful search in his Complaint (Dkt. 1) and to the extent he attempts to do in his opposition to summary judgment, this claim is waived, for the reasons discussed *infra*.

[11] Under New York law, false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

(same).

There is no dispute that the Individual Defendants intended to confine Plaintiff, that Plaintiff was conscious of the confinement, and that he did not consent to the confinement. Thus, the only factual issues that could be in dispute are whether probable cause existed to arrest Plaintiff on April 18, 2013 and on April 20, 2013. Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed* or *is committing a crime.*" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis in original) (quoting *Weyant*, 101 F.3d at 852); *see also Dancy*, 843 F.3d at 107.

Defendants assert that, as of April 18, 2013, there was probable cause to arrest Plaintiff for both the air rifle charge on April 18, 2013 and the robbery charge on April 20, 2013. (Defs.' Br. at ECF 17, 19-21.) Defendants further argue that even if Det. Franklyn did not have probable cause to arrest Plaintiff on the robbery charge as of April 18, 2013, he did have the necessary probable cause by the time Plaintiff was arrested on that charge on April 20, 2013. (*Id.* at ECF 21.) Plaintiff asserts that there was no probable cause at any time for either arrest. The Court addresses the two arrests in turn.

### 1.    April 18, 2013 Brooklyn Air Rifle Arrest

Defendants argue that there was probable cause to arrest Plaintiff on April 18, 2013 because Det. Schierle had direct knowledge that Plaintiff had violated Section 10-131(b)(1) of the New York City Administrative Code, when an air rifle was found at Plaintiff's apartment during the search that day and Plaintiff admitted that he had no permit for it. (*Id.* at ECF 19.) A violation of Section 10-131(b)(1) is a misdemeanor punishable by "a fine of not more than fifty dollars, or by imprisonment not exceeding thirty days, or by both." N.Y.C. Admin. Code § 10-131(f).

The evidence cited by Defendants is plainly sufficient to establish probable cause to arrest Plaintiff for violating Section 10-131(b)(1). Plaintiff's contrary argument appears to be premised on his contention that the evidence was only discovered after what he is now alleging was an unlawful entry into and search of his apartment. However, as Defendants correctly argue, "even if the search of Plaintiff's apartment was improper under the Fourth Amendment, that would not negate the existence of probable cause[,] because it is well settled that the fruit of the poisonous tree doctrine cannot be invoked to support a section 1983 claim[.]" (Defs.' Reply Br., Dkt. 40, at ECF 2 (quoting *Jenkins,* 478 F.3d at 91 n.16 (2d Cir. 2007) (internal quotation marks and citations omitted)). Indeed, "the Second Circuit has clearly rejected . . . attempt[s] to recover damages under § 1983 based on the fruits of the poisonous tree doctrine." *Gannon v. City of New York*, 917 F. Supp. 2d 241, 243 (S.D.N.Y. 2013) (citing *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999)). Here, regardless of any factual dispute over whether the search of Plaintiff's apartment was lawful, the Court may consider the discovery of the air rifle in Plaintiff's apartment and his admission about not having the required permit for the rifle in finding, as a matter of law, that probable cause supported Plaintiff's April 18, 2013 arrest for violating N.Y.C. Admin. Code § 10-131(b). Thus, Det. Schierle is entitled to summary judgment on Plaintiff's April 18, 2013 false arrest claim.[12] *See, e.g., Kidd v. City of New York,* 13-cv-97(ILG)(CLP), 2015 WL 5007940 at *1 n.2, *3 (E.D.N.Y. 2015) (official who found illegal air rifle in plaintiff's home had probable cause to issue him a summons, giving them "a complete defense to [plaintiff's] claims for false arrest, malicious prosecution, and abuse of process"); *Murchison-Allman v. City of New York,* 14-cv-2160(ALC), 2016 WL 1322445 at *3 (S.D.N.Y. Mar. 31, 2016) (probable cause existed to arrest

---

[12] The Court construes Plaintiff's April 18, 2013 false arrest claim to be directed at Det. Schierle only, since there is no evidence that Det. Franklyn was involved in any way in that arrest, and any such claim against Det. Franklyn would fail for that reason.

Plaintiff for possession of ammunition in violation of N.Y.C. Admin. Code § 10-131(i)(3)); *Gill v. City of New York*, 15-cv-5513(ARR)(LB), 2017 WL 1097080*, at* \*8 (E.D.N.Y. Mar. 23, 2017) (summary judgment granted on false arrest where there was "probable cause to arrest plaintiff for a violation of the [N.Y.C.] Administrative Code").

### 2.    April 20, 2013 Queens Robbery Arrest

Defendants argue that Plaintiff's second arrest on April 20, 2013 was justified, because at that point, Det. Franklyn had the information developed by Det. Schierle, as well as Plaintiff's own self-identification in the picture taken from surveillance video of the November 13, 2012 Queens Radio Shack robbery, and Plaintiff's videotaped and written confessions admitting his participation in that robbery. (Defs.' Br., at ECF 22-23, 25.) In particular, Plaintiff's written confession was lengthy and detailed. (Dkt. 34-7, at ECF 2-3.) Plaintiff's confessions alone provided ample basis for a reasonable officer to believe that probable cause existed to arrest Plaintiff on April 20, 2013. *See Bowman v. v. City of Middletown,* 91 F. Supp. 2d 644, 660 (S.D.N.Y. 2000).

Plaintiff's argument that the involuntariness of his confessions undercuts a finding of probable cause is unavailing. As previously discussed, it is "well settled that the fruit of the poisonous tree doctrine cannot be invoked to support a section 1983 claim[.]" *Jenkins,* 478 F.3d at 91 n.16. A confession can be used to establish probable cause, even if it is later found to be inadmissible. *Restivo v. Hessemann,* 846 F.3d 547, 571 (2d Cir. 2017). To find otherwise, Plaintiff would need to introduce facts establishing that Defendants were aware that the confession was false, or that they knew it could not be used to support a prosecution. *See Bowman,* 91 F. Supp. 2d at 661. Plaintiff cannot make such a showing. Thus, even if Plaintiff did not voluntarily waive his *Miranda* rights, and regardless of the veracity of Lias's identification of Plaintiff and

accompanying statements, Plaintiff's confession on April 19, 2013 gave Det. Franklyn probable cause to arrest Plaintiff on April 20, 2018 for the November 2012 Queens Radio Shack robbery.

The Court, therefore, grants the Individual Defendants summary judgment with respect to Plaintiff's April 20, 2013 false arrest claim.[13]

### B. Malicious Prosecution

Plaintiff alleges malicious prosecution stemming from both his April 18 and 20, 2013 arrests. To prevail on a claim of malicious prosecution, a plaintiff must prove "(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York,* 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks and citations omitted). A malicious prosecution claim under § 1983 further requires that Plaintiff demonstrate "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir. 2000).

Although Defendants offer several grounds for dismissing Plaintiff's malicious prosecution claims (Defs.' Br. at ECF 24-29), the Court need address only one, namely, that no jury could find a lack of probable cause for either of the prosecutions.[14] As discussed *supra*, the Court has found, as a matter of law, that probable cause existed for both of Plaintiff's arrests, and

---

[13] In contrast to the April 18, 2013 arrest, the Court construes Plaintiff's April 20, 2013 false arrest claim as directed toward both of the Individual Defendants.

[14] Defendants also argue that Plaintiff cannot establish that: (1) the Queens robbery prosecution terminated in his favor; (2) he suffered any deprivation of liberty that is attributable to the Brooklyn air rifle case, because he was already under equal or greater restraints due to the Queens robbery prosecution, as well as other criminal charges filed later; and (3) that either prosecution was commenced with actual malice. (Defs.' Br. at ECF 24.)

Plaintiff identifies no post-arrest evidence undermining that probable cause. While "probable cause can be eliminated by evidence that surfaces after charges are filed," *Bowman,* 91 F. Supp. 2d at 660, Plaintiff's bare statement that there was a "lack of evidence" (White Dep., Dkt. 39-1, 131:19-20) is not enough to create a triable issue of fact. And, as discussed before, the alleged inadmissibility of the evidence obtained from the search of Plaintiff's apartment and Plaintiff's confession as "fruits of the poisonous tree" cannot support his Section 1983 claim for malicious prosecution. *See DiMascio v. City of Albany,* 205 F.3d 1322, 1322 (2d Cir. 2000) (summary order) (citing *Townes* and finding that defendants would not be liable for malicious prosecution damages after independent cause for prosecution occurred); *Morgan v. City of New York*, No. 12-CV-704, 2014 WL 3407714, at *5 n.7 (E.D.N.Y. July 10, 2014). Because Plaintiff cannot prove the absence of probable cause for his prosecutions on the air rifle and robbery charges, the Court grants Defendants summary judgment on both malicious prosecution claims.

## II.      Substantive Due Process

Plaintiff appears to assert a separate substantive due process claim under the Fourth Amendment. (Dkt. 1, at ¶ 24.) The nature of this claim, however, is far from clear. To the extent that Plaintiff attempts to assert a separate "due process" claim based on the same conduct that underlies his Fourth Amendment claims for false arrest and malicious prosecution, his claim is dismissed as duplicative. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted); *see also Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007); *Creighton v. City of New York*, No. 12 CIV. 7454 (PGG), 2017 WL 636415, at *42 (S.D.N.Y. Feb. 14, 2017) ("[W]here a due process

claim is based on the same conduct that gave rise to [a] plaintiff's false arrest and malicious

prosecution claims, the due process claim should be dismissed as both duplicative and merit[

]less." (citation and quotation marks omitted)).

Furthermore, to the extent Plaintiff is alleging that his due process rights were violated

because he was allegedly coerced into consenting to the search of his apartment on April 18, 2013,

this claim is waived.  Plaintiff did not plead an unlawful search claim in his Complaint (*see* Dkt.

1), and raises it for the first time, if he does at all, in his opposition brief (Pl.'s Br. at ECF 9-10).

It is well-established that "a party generally may not assert a cause of action for the first time in

response to a summary judgment motion."  *Design Partners, Inc. v. Five Star Elec. Corp*., 2017

WL 818364, at *17 (E.D.N.Y. Mar. 1, 2017) (internal quotation marks and citations omitted); *see*

*also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006); *Rojo v. Deutsche Bank,* 487

F. App'x 586, 588-89 (2d Cir. 2012) (summary order) ("We have refused to address the merits of

claims raised for the first time at [summary judgment]." (collecting cases)).[15]

III.    **Common Law Claims**

To the extent Plaintiff did not withdraw any common law false arrest and malicious

prosecution claims when he withdrew his other state common law claims, Defendant is granted

summary judgment for the reasons stated above.  In addition, Plaintiff's claim against the City

under a theory of *respondeat superior* is moot because all of Plaintiff's common law claims have

been withdrawn or denied on the merits.

---

[15] This analysis applies with equal force to the extent that Plaintiff makes vague allegations
in his opposition brief that his "fifth and sixth amendment rights to counsel were also infringed
upon."  (Pl.'s Br. at ECF 11.)  This claim appears nowhere in Plaintiff's complaint, and is,
therefore, waived.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully directed to enter judgment and close the case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 29, 2018
   Brooklyn, New York